UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

BRIAN DAVIS,                        )
                                    )
    *Plaintiff,*                 )
                                    )
*v.*                                )    No.1:07-cv-79
                                    )    *Edgar*
CSX TRANSPORTATION, INC.,           )
                                    )
    *Defendant.*                )

## **MEMORANDUM**

Plaintiff Brian Davis brings this action pursuant to the Federal Employees Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* Trial was originally scheduled in this action for April 15, 2008. The trial schedule has since been amended [Court Doc. No. 39], but the parties seek rulings on certain pre-trial motions. The parties have filed numerous motions in limine in this matter. [Court Doc. Nos. 31, 32, 33, 34, 36, 37, 40]. Plaintiff Brian Davis has also filed a motion for sanctions against Defendant CSX Transporation, Inc. ("CSXT"). [Court Doc. No. 42]. Defendant CSXT has further filed a motion for an order granting its motions in limine in full due to Plaintiff's failure to file responses to the motions in a timely manner. [Court Doc. No. 43].

This court heard oral argument on the parties' motions in limine during a hearing held in chambers on April 15, 2008. The court has reviewed the motions, the evidence provided by the parties, and the law and is now prepared to issue rulings regarding some of the parties' motions in limine. Other motions will be resolved at a later date upon the development of additional facts by the parties. This memorandum and order will clarify the court's rulings on all of the pending motions in limine.

    **A.**    **CSXT's Motion in Limine on Negligence and Causation**

This motion in limine [Court Doc. No. 31] deals with the appropriate standard of causation pursuant to FELA. It therefore addresses an issue most appropriately handled in the jury instructions. Therefore, the court will DEFER ruling on this issue until the jury charge conference prior to charging the jury with their instructions in this matter.

### B. CSXT's Motion in Limine Regarding Plaintiff's Medical Expenses

CSXT brings this motion to prevent Plaintiff from seeking relief from the jury from "bills or expenses for medical care and treatment incurred by Plaintiff which have been paid on Plaintiff's behalf by CSXT under United Healthcare, GA-23000 which applies to railroads and railroad employees throughout the nation." [Court Doc. Nos. 32, 51]. Defendant claims that the collateral source rule does not apply to benefits paid to Plaintiff under a group insurance policy provided under a collective bargaining agreement. Plaintiff argues that he "has no intent on receiving any double recovery for medical expenses." [Court Doc. No. 45]. However, he argues that evidence of all of his medical expenses should be admitted to demonstrate evidence of the extent and severity of his injuries. The evidence presented by the parties does not indicate what entity has paid for Plaintiff's various medical bills or what medical bills are being shouldered by Plaintiff. As the court indicated to the parties during the hearing on this matter, the court will RESERVE ruling on this issue while the parties obtain records and evidence indicating who has paid for Plaintiff's medical bills.

### C. Plaintiff's Motion in Limine Regarding Various Evidentiary Issues

Plaintiff has asked this court to review several different evidentiary issues in one motion in limine. [Court Doc. No. 33].

### 1. Evidence Pertaining to Effects of Judgments on Insurance Premiums

Plaintiff requests that "CSXT should be prohibited from arguing or introducing any testimony or evidence concerning the effect, or the result of, the claim, suit, or judgment on insurance premiums or charges, or freight charges, either generally or as particularly applied to the Defendant, or as to the jury as members of the community, as a result of this or any other matter." CSXT agrees that such evidence should not be admitted. Therefore, this court finds that no proof on the issues listed *supra* will be admissible at trial and will GRANT this part of Plaintiff's motion.

### 2 and 3. Evidence Regarding Plaintiff's Prior and Future Railroad Retirement Board Benefits

Plaintiff requests that CSXT be prohibited from "arguing or introducing any testimony or evidence that Plaintiff has applied for or received benefits from the Railroad Retirement Board of the United States Government in the past" or the future. In *Eichel v. New York Cent. Railroad Co.*, the U.S. Supreme Court addressed whether evidence regarding the disabled railroad worker's disability pension payments pursuant to the Railroad Retirement Act of 1937 was admissible. 375 U.S. 253 (1963). The Supreme Court determined that evidence of such disability payments was not admissible. *Id.* at 255-256. Therefore, Plaintiff's motion will be GRANTED. CSXT will be prohibited from introducing testimony relating to the Plaintiff's receipt of past Railroad Retirement Board payments or possible future payments.

### 4. Evidence Regarding the Filing of Plaintiff's Motion in Limine

Plaintiff asks this court to preclude CSXT from introducing testimony pertaining to the filing of this motion in limine. It is not clear that CSXT had any intention of mentioning Plaintiff's motion in limine to the jury. However, the motion on this issue will be GRANTED, and CSXT will be prohibited from introducing testimony regarding this motion in limine.

**5.     Argument Pertaining to Assumption of Risk**

Plaintiff requests that CSXT be precluded from introducing evidence pertaining to the assumption of risk, citing 45 U.S.C. § 54. CSXT indicates that it is not planning on arguing an assumption of risk theory to the jury. The court concludes that the assumption of risk theory is not available to defendants under FELA, and no evidence regarding the assumption of risk theory will be admitted. The court will GRANT this portion of Plaintiff's motion in limine. However, CSXT will not be precluded from arguing that Plaintiff was contributorily negligent.

**6 and 7.     Testimony Regarding Mitigation of Damages**

Plaintiff requests that "CSXT should be prohibited from arguing or introducing any testimony or evidence that Plaintiff failed to mitigate damages by not seeking work after the incident." [Court Doc. No. 33, p. 3]. Plaintiff claims that CSXT has not identified occupations it believes Plaintiff could perform that were available to him and asserts that CSXT has the burden of proving a failure to mitigate damages. The court declines to preclude CSXT from introducing any evidence of mitigation. Therefore, the court will DENY this portion of Plaintiff's motion. However, the court concludes that if CSXT intends to argue at trial that Plaintiff has failed to mitigate his damages, it must share its evidence regarding mitigation of damages with Plaintiff prior to trial.

**8.     Evidence Regarding Surveillance Activities**

Plaintiff requests that CSXT be prohibited from introducing video or photographic evidence pertaining to its surveillance activities of Plaintiff unless such evidence has been produced to Plaintiff in discovery. CSXT agrees that it must produce evidence of its surveillance activities to Plaintiff if it intends to introduce such evidence at trial. Therefore, the court will

GRANT this portion of Plaintiff's motion in limine.

### 9. Evidence Pertaining to Safety Rules

Plaintiff requests that "CSXT should be prohibited from introducing any evidence that Plaintiff violated any safety rule or practices. Defendant failed to identify or present any evidence regarding any rule or practice violation of Plaintiff, other than a general safety rule." The court agrees that if CSXT is going to introduce evidence regarding Plaintiff's violation of a safety rule, it must be evidence pertaining to violation of a specific safety rule rather than a general rule pertaining to safety. If CSXT introduces such evidence of Plaintiff's violation of a specific safety rule, Plaintiff will, of course, be permitted to cross-examine the defense witness regarding the violation of the specific safety rule. Therefore, the court will DENY this portion of Plaintiff's motion because he seeks the exclusion of testimony related to *any* safety rule or practice. However, to the extent that CSXT seeks to introduce evidence regarding Plaintiff's violation of a safety rule, it must be a specific safety rule.

### 10. Evidence Regarding Furtherance of Interstate Commerce

CSXT agrees that it will not argue that Plaintiff was not engaged in the furtherance of interstate commerce at the time of the accident at issue in this case. Thus, the parties agree regarding the admissibility of such evidence. This portion of the motion will be GRANTED.

### 11. Evidence Regarding CSXT's Historical Safety Record

The parties agree that CSXT "should be prohibited from offering any testimony and/or evidence about its historical safety record." Therefore, this portion of the motion will be GRANTED.

### 12. Evidence Regarding CSXT's Vocational Rehabilitation Program

Plaintiff requests that CSXT be prohibited from introducing testimony or other evidence regarding its vocational rehabilitation program. CSXT argues that if Plaintiff declined to participate in its vocational rehabilitation program, then that is some evidence of Plaintiff's failure to mitigate his damages. This court agrees with CSXT that Plaintiff's failure to participate in the vocational rehabilitation program is some evidence of Plaintiff's failure to mitigate. Therefore, CSXT will be permitted to introduce limited evidence regarding Plaintiff's decision not to participate in the program. However, this evidence will be very narrow in scope, and Plaintiff will be permitted to cross-examine any defense witnesses regarding the program. For these reasons Plaintiff's motion regarding the vocational rehabilitation program will be DENIED.

**13.     Expert Testimony**

Plaintiff seeks an order from this court barring CSXT from introducing any expert testimony. Plaintiff claims that CSXT has failed to identify any expert witnesses or to disclose any expert reports in accordance with Federal Rule of Civil Procedure 26. Plaintiff points to expected testimony from two individuals, Tony Nobles and Dale Mabe, whom he expects to testify regarding their analysis of records. The court declines to prohibit CSXT from introducing any expert witnesses at trial. However, CSXT is bound by Federal Rule of Civil Procedure 26's requirements pertaining to disclosure of expert witnesses and their reports. Thus, if CSXT expects to introduce any individuals offering expert opinions in this trial, it must comply fully with Federal Rule of Civil Procedure 26. In addition, if CSXT is in doubt regarding whether one of its witnesses constitutes an expert witness, it should disclose both the witness and his or her opinion prior to trial in accordance with Rule 26. For these reasons, Plaintiff's motion pertaining

to CSXT's expert witnesses will be DENIED. CSXT's motion for clarification regarding witnesses Mabe and Nobles [Court Doc. No. 40] will be GRANTED. The court clarifies that if there is any question that Mabe and Nobles may be considered to be experts, CSXT should treat them as experts pursuant to Federal Rule of Civil Procedure 26 with full disclosure to Plaintiff of their expected opinions.

### D. CSXT's Motion in Limine Regarding Plaintiff's Economic Damages

CSXT asks this court to exclude evidence pertaining to Plaintiff's alleged damages. [Court Doc. No. 34]. It requests that evidence regarding employer-paid Tier I and Tier II taxes be excluded from evidence pertaining to Plaintiff's damages. It further seeks that Plaintiff deduct federal income taxes, social security taxes and railroad retirement board taxes from his damage requests. Because Plaintiff did not enroll in CSXT's health insurance plans, but rather enrolled in his girlfriend's insurance plans, CSXT seeks the exclusion of health insurance premiums from Plaintiff's request for damages. Finally, CSXT requests that Plaintiff be required to deduct the business costs and expenses that he will not incur by not working for CSXT from his request for damages.

Plaintiff does not appear to be contesting that it is his after-tax income that is relevant in determining an appropriate amount of damages. Indeed, the U.S. Supreme Court has provided clear guidance on this issue:

> The amount of money that a wage earner is able to contribute to the support of his family is unquestionably affected by the amount of the tax he must pay to the Federal Government. It is his after-tax income, rather than his gross income before taxes, that provides the only realistic measure of his ability to support his family. It follows inexorably that the wage earner's income tax is a relevant factor in calculating the monetary loss suffered by his dependents when he dies.

*Norfolk & Western Railroad Co. v. Liepelt*, 444 U.S. 490, 493-94 (1980). The Supreme Court

noted that the Internal Revenue Code excludes awards for personal injuries from taxation. *Id.* at 496-497. The court concludes that the jury will be instructed that federal income taxes should be deducted from any amount of damages awarded to the plaintiff. It further appears clear that social security taxes should also be excluded from any damages awarded to Plaintiff. *See e.g., Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 479 (5th Cir. 1984).

The parties dispute, however, whether Tier I and Tier II taxes should be deducted from any amount awarded to the Plaintiff. Tier I and Tier II taxes are taxes that railroad employees and employers are required to pay, and they are calculated as a percentage of employee compensation. *See* 26 U.S.C. §§ 3201, 3221; *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 574 (1989). As the U.S. Supreme Court explained in *Hisquierdo*,

> The Railroad Retirement Board, provided for by the Act, 45 U.S.C. § 231f, disburses benefits from the account to each eligible "individual," 45 U.S.C. § 231a. In its modern form, the Act resembles both a private pension program and a social welfare plan. It provides two tiers of benefits. The upper tier, like a private pension, is tied to earnings and career service. An employee, to be eligible for benefits, must work in the industry 10 years. Absent disability, no benefit is paid, however, until the employee either reaches age 62 or is at least 60 years old and has completed 30 years of service. 45 U.S.C. § 231a(a)(1) . . . . The lower, and larger, tier of benefits corresponds exactly to those an employee would expect to receive were he covered by the Social Security Act. 45 U.S.C. § 231b(a)(1).

439 U.S. at 574-575.

As the 2006 Railroad Retirement Board Handbook explains:

> The 1974 Act provided a tier I formula yielding amounts equivalent to social security benefits, taking into account both railroad retirement and nonrailroad social security credits. A tier II formula, based on railroad service exclusively, provided benefits comparable to those paid over and above social security benefits by other industrial pension systems.

www.rrb.gov/pdf/opa/handbook.pdf at p. 5. The handbook further describes the various sources

of funding for Tier II benefits, including payroll taxes, investments, "income from a financial interchange with the social security trust funds," revenue from federal income taxes, and appropriations from general revenues. *See id.* at 41.

In *Eichel v. New York Cent. Railroad Co.*, the U.S. Supreme Court addressed whether evidence regarding the disabled railroad worker's disability pension payments pursuant to the Railroad Retirement Act of 1937 was admissible. 375 U.S. 253 (1963). The Supreme Court determined that evidence of such disability payments was not admissible:

> In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. Moreover, it would violate the spirit of the federal statutes if the receipt of disability benefits under the Railroad Retirement Act of 1937 . . . were considered as evidence of malingering by an employee asserting a claim under the [FELA]. . . . It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. We hold therefore that the District Court properly excluded the evidence of disability payments.

*Id.* at 255-256; *see also, Green v. Denver & Rio Grande Western Railroad Co.*, 59 F.3d 1029, 1033 (10th Cir. 1995); *Prater v. Consolidated Rail Corp.*, 272 F.Supp.2d 706, 716 (N.D. Ohio 2003); *Starling v. Union Pacific Railroad Co.*, 203 F.R.D. 468, 483 (D. Kan. 2001); *Snipes v. Chicago, Central & Pacific Railroad Co.*, 484 N.W.2d 162 (Iowa 1992).

In *Maylie v. National Railroad Passenger Corp.*, a district court addressed whether railroad retirement taxes should have been deducted from the accounting of plaintiff's lost income. 791 F.Supp. 477 (E.D. Pa. 1992). The defendant railroad claimed that the railroad retirement taxes should have been deducted from estimations of plaintiff's lost income, citing *Liepelt*, 444 U.S. 490 for support. The district court found the *Liepelt* case distinguishable:

"*Liepelt* does not support defendant's position, however: that case involved only a deduction for income taxes, a deduction that was applied in the present case." *Id.* at 487. The district court also distinguished the *Eichel* case, but still determined that since the defendant had objected to the value of plaintiff's pension being included as an item of damages, the railroad retirement taxes should not have been deducted from the estimation of plaintiff's lost income. *Id.* at 487-88. The court explained:

> Although *Eichel* does not provide plaintiff with the support he desires, I nevertheless conclude that, under the circumstances presented in this case, plaintiff's income should not be reduced by the amount of railroad retirement taxes that he would have been required to pay had he not been injured and continued working. Railroad retirement taxes are paid into a fund from which railroad retirement benefits are paid out. *See* 45 U.S.C. § 231n(a). Had plaintiff continued working until the age of sixty-two, and had plaintiff remained in defendant's employ during that time, he would have been eligible for an annuity upon his retirement, paid from the fund into which his railroad retirement taxes had been paid. *See* 45 U.S.C. § 231a(a)(1)(ii). It is undisputed that plaintiff is entitled to recover the value of lost future fringe benefits. *Cf. Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 534 & n.12, 103 S.Ct. 2541, 2549 & n. 12, 76 L.Ed.2d 768 (1984) . . . It is likewise clear that the $4,700 figure, which the parties agreed represented the value of plaintiff's benefits package, did not include the contingent value of plaintiff's pension benefits. . . . The value that the jury placed on plaintiff's lost future wages and benefits, therefore, did not include the value of his lost railroad retirement pension. It would be inappropriate to deduct from plaintiff's lost salary taxes that, in effect, represented plaintiff's contribution toward a pension without including, as an item of damages, the value of that pension. Because defendant did not consent to inclusion of the value of the pension as an item of damages, it was not error to refuse to reduce plaintiff's lost wages by the amounts he would have had to pay in railroad retirement taxes.

*Id. See also, Ramsey v. Burlington Northern and Santa Fe Railroad Co.*, 130 S.W.3d 646, 652-53 (Mo. Ct. App. 2004); *Rachel v. Consolidated Rail Corp.*, 891 F.Supp. 428, 429-430 (N.D. Ohio 1995).

CSXT assumes that Tier I and Tier II taxes should be treated exactly as federal income taxes and social security taxes. It cites to several decisions from this district for the proposition

that Tier I and Tier II taxes should be deducted from the calculation of Plaintiff's damages. This court is not entirely sure that the issue is as simple as CSXT suggests. However, the court lacks sufficient information to make a ruling at this time. It is unclear what Plaintiff's pension benefits are, if any, and what those pension benefits might have been if he had continued to be able to work. It is further unclear what the Plaintiff's expert includes in his assessment of past and future damages. Plaintiff contends that he is not seeking lost pension benefits as part of his lost fringe benefits. However, it is unclear what the alleged past and future fringe benefits are.

Whether the court requires deduction of all or a portion of Tier I and Tier II taxes from Plaintiff's damages will depend on specific information provided by the parties regarding Plaintiff's future pension amounts and the pension he would have been able to receive had he continued working for CSXT. In sum, the court RESERVES ruling on this issue until closer to the time of trial when it will request further briefing and factual information from the parties on this issue.

With respect to Plaintiff's lost health insurance benefits, the court agrees with CSXT that evidence of such benefits should be excluded because Plaintiff elected not to receive those benefits. Plaintiff argues that he received health insurance coverage from his girlfriend's employer and that this situation could have changed at any time. However, that is the choice that Plaintiff made, and the jury will not hear evidence regarding damages for a fringe benefit Plaintiff *could* have elected, but did not.

Finally, the court agrees with CSXT that evidence of business costs and expenses Plaintiff will not incur in the future should be excluded from evidence. In sum, this motion will be GRANTED IN PART and RESERVED IN PART.

### E. Motion in Limine to Exclude Testimony of Expert Michael O'Brien

CSXT moves to exclude the testimony of Plaintiff's expert witness, Michael O'Brien. [Court Doc. No. 36]. Plaintiff seeks to introduce the following opinions through Mr. O'Brien: "(1) that the presence of diesel fuel on the walkway/steps of a locomotive is a defect in violation of federal statutes and regulations; (2) that the fuel created a hazardous condition; and (3) that hazard caused Plaintiff to slip while mounting the engine." [Court Doc. No. 49]. The court has reviewed the briefs and has heard the arguments of the parties regarding Mr. O'Brien's qualifications. The parties agree that Mr. O'Brien never inspected the engine and has not reviewed pertinent documents pertaining to the lack of evidence of a fuel leak. Plaintiff has failed to demonstrate how Mr. O'Brien's proposed testimony meets the requirements of Federal Rule of Evidence 702(1), which requires that the testimony be based on sufficient facts or data. The court has determined to GRANT IN PART and DENY IN PART the motion regarding Mr. O'Brien's testimony. This court concludes that Mr. O'Brien may testify regarding the proposed first part of his testimony, i.e., that if fuel was present on the walkway or steps of the locomotive, the presence of such fuel would be a violation of federal regulations such as 49 C.F.R. § 229.119(c) and 49 C.F.R. § 229.45. Mr. O'Brien will be prohibited from testifying regarding Plaintiff's response topics two and three pertaining to causation.

### F. Motion in Limine Pertaining to Proposed Testimony of Duane Barton

CSXT moves this court for an order precluding evidence or testimony "mentioning or making reference to or suggestion that CSXT created an environment of intimidation and/or places its employees in fear of reprisals for reporting injuries." [Court Doc. No. 37]. Plaintiff seeks to introduce testimony from Duane Barton, a former employee of CSXT whom the

company fired for intimidating and encouraging injured employees not to report their accidents and injuries. CSXT argues that Mr. Barton's activities related to other employees and that there is no evidence to suggest that Plaintiff knew that any alleged policy of intimidation existed at CSXT. Plaintiff urges this court to deny CSXT's motion because Mr. Barton's testimony will corroborate Plaintiff's testimony regarding why he did not report to CSXT managers sooner that he slipped on fuel on the steps.

This court has reviewed the briefs and has heard the arguments of the parties regarding this issue and Mr. Barton's proposed testimony. The court finds that the proposed evidence and testimony regarding an unwritten policy of intimidating employees not to report injuries is too remote from the facts of this case. Although Plaintiff may testify that he feared reprisal for reporting his injury and its cause, testimony from Mr. Barton regarding CSXT's alleged intimidation of other employees would result in creating a trial within a trial and risks confusing the jury. There is no evidence that Plaintiff himself was intimidated or encouraged not to report his injury. The proposed testimony from Mr. Barton would involve different people and other fact situations. Admission of Mr. Barton's testimony would potentially place CSXT in the position of having to defend factual situations relating to other employees.

Further, the evidence does not support a ruling that CSXT's alleged policy of intimidation was prevalent enough to constitute a habit or routine practice in accordance with Federal Rule of Evidence 406. In addition, Federal Rule of Evidence 404 precludes courts from admitting evidence of other acts to prove conduct. The court concludes that evidence and testimony regarding CSXT's alleged policy of intimidation, including Mr. Barton's proposed testimony on alleged instances of intimidation and/or congressional reports on industry practices,

will be excluded from trial based on Federal Rule of Evidence 403 due to its potential to create a confusing issue for the jury and the danger of unfair prejudice to CSXT. CSXT's motion will be GRANTED.

### G. Plaintiff's Motion for Sanctions

Plaintiff brings a motion for sanctions against CSXT pursuant to Federal Rule of Civil Procedure 37. [Court Doc. No. 42]. CSXT responds opposing the motion and requesting its costs for defense of the motion. [Court Doc. No 52]. This trial has been postponed until January of 2009. The parties have plenty of time to sort out any outstanding discovery disputes before the new trial date. Plaintiff has thus not been prejudiced by CSXT's alleged failure to cooperate in discovery. The court therefore will DENY Plaintiff's motion for sanctions at this time.

### H. CSXT's Motion to Enter Order on Defendant's Motions in Limine

CSXT moves for an order granting all of its motions in limine due to Plaintiff's failure to file timely responses to the motions. [Court Doc. No. 43]. Plaintiff has since filed responses to all of the motions in limine, and the parties have participated in a hearing before this court at which they argued their respective positions. The court has reviewed the merits of each motion in limine *supra*. Therefore, this court will DENY CSXT's motion as moot.

**Conclusion**

As noted *supra*, the court will make the following rulings with respect to the parties' pending motions in limine and motion for sanctions:

1) CSXT's motion relating to the standard for negligence and causation will be RESERVED until a date closer to the pending trial [Court Doc. No. 31];

2) the court will RESERVE ruling on CSXT's motion regarding Plaintiff's medical

expenses until the parties have obtained further records pertaining to the payment of Plaintiff's medical bills [Court Doc. No. 32, 51];

    3)    as analyzed *supra*, Plaintiff's motion in limine seeking several different evidentiary rulings will be GRANTED IN PART and DENIED IN PART [Court Doc. No. 33];

    4)    the court will GRANT IN PART and RESERVE IN PART CSXT's motion in limine pertaining to Plaintiff's economic damages [Court Doc. No. 34];

    5)    the court will GRANT IN PART and DENY IN PART CSXT's motion to exclude the testimony of Plaintiff's proposed expert Michael O'Brien [Court Doc. No. 36];

    6)    the court will GRANT CSXT's motion to exclude the testimony of Duane Barton [Court Doc. No. 37];

    7)    the court will GRANT CSXT's motion for clarification regarding its potential expert witnesses [Court Doc. No. 40].

    8)    Plaintiff's motion for sanctions will be DENIED [Court Doc. No. 42].

In addition, CSXT's motion for entry of an order granting its motions in limine due to Plaintiff's failure to file timely responses will be DENIED as moot. [Court Doc. No. 43].

A separate order will enter.

                      */s/ R. Allan Edgar*
                      R. ALLAN EDGAR
              UNITED STATES DISTRICT JUDGE